UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL LEE WAKEFIELD,

          Plaintiff,

v.                                                              Case No. 17-cv-966-pp

TED SERRANO, LT. AMIN,
RYAN MCCLAIN, CAPT. GEIRNOFF,
STEVEN JOHNSON, and
RACINE CORRECTIONAL INSTITUTION.

          Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, alleging that the defendants violated his Eighth and Fourteenth Amendment rights at the Racine Correctional Institution. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and screens the plaintiff's complaint.

**I.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2)**

The Prison Litigation Reform Act ("PLRA") applies to this case, because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the filing fee, as long as he meets certain

conditions. Id. One of those conditions is a requirement that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays that partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 26, 2017, the court issued an order, requiring the plaintiff to pay an initial partial filing fee of $17.11. Dkt. No. 6. The court received that fee on September 8, 2017. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### B. Facts Alleged in the Complaint

The plaintiff says that on February 2, 201y, he was put on the segregation unit because he was allegedly involved in an aggravated assault the previous day. Id. at 2. The next day, defendant Serrano questioned the plaintiff about "an assault." Id. The plaintiff explained that he had nothing to do with

3

any fight, and that Serrano "had the wrong guy." Id. Serrano responded that the plaintiff would regret not helping himself. Id.

About a week later, on February 8, 2017, the plaintiff was called to the hearing room "to get an offer on whatever conduct report [Serrano] wrote." Id. Apparently the conduct report charged the plaintiff with aggravated assault, and indicated that he would be confined to segregation for 120 days. Id. at 2-3. The plaintiff admits that he was "livid" when he read the conduct report, because it was " a complete lie Lt. Serrano had made up." Id. at 3. Serrano said that he'd reviewed camera footage and had seen the plaintiff attack another inmate; the plaintiff asserts that this was false. Id. The plaintiff decided to exercise his right to fight the conduct report through the administrative process. Id. Defendant McClain was appointed staff advocate for the plaintiff, and the plaintiff asked that the video footage Serrano claimed to have reviewed be presented at the disciplinary hearing. Id.

On February 16, 2017, the plaintiff had his disciplinary hearing. Id. Before the hearing started, the plaintiff asked McClain if he had seen the video. Id. McClain "smiled and told [the plaintiff] Lt. Serrano told him there was no video." Id. The plaintiff told defendant Amin (the hearing officer) that Serrano had lied, and had written a false conduct report. Id. He explained to Amin that he'd asked for the video footage to be presented; he also presented a witness who stated that the plaintiff was not there. Id. at 3-4. Despite the plaintiff's explanations and evidence, Amin found the plaintiff guilty and gave him 120 days in segregation. Id. at 4. The plaintiff states that Amin told him that "Lt.

4

Serrano was [Amin's] friend and she believed what he wrote in the conduct report." Id.

The plaintiff appealed the decision to defendant Warden Steven Johnson, explaining again that the video footage hadn't been presented at the hearing, that Serrano had lied in the conduct report, and had "used his status as a Lt. to make the conduct report stick." Id. Johnson, however, affirmed Amin's finding on March 7, 2017. Id. Three days later, on March 10, 2017, prison staff moved the plaintiff to a one-man cell in the segregation unit that only had one bed. Id. The plaintiff had to share this cell with another inmate, even though he indicates that he saw "at least 2 to 3 visible unoccupied cells" in the unit. Id. Because there was only one bed, the plaintiff had to sleep on a mattress on the floor. Id.

A few hours after arriving at his cell, the plaintiff noticed that there was an ant infestation on the floor where he had to sleep. Id. He started complaining and writing corrections officers, sergeants, the segregation captain (defendant Geirnoff)—anyone who would listen. Id. at 4-5. He also wrote to the security director and to Warden Johnson. Id. at 5. Over the next few days, the plaintiff was attacked by ants every night. Id. He had over 100 ant bites on his torso and arms. Id. He felt humiliated and tortured and could not fall asleep. Id.

Finally, on March 17, 2017, Sergeant Slawson (not a defendant) took the plaintiff's complaints seriously and called the Health Services Unit (HSU). Id. Nurse Amy (not a defendant) came to examine the plaintiff and was visibly

5

distraught by his condition. Id. She gave the plaintiff some medicine and told him that she would talk to Geirnoff, because the living conditions in his cell were "ridiculous." Id. One hour later, the plaintiff was released from segregation. Id. The plaintiff seeks monetary relief and injunctive relief. Id. at 8-9.

    C.    <u>Legal Analysis of Alleged Facts</u>

To state a claim for a violation of civil rights under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. <u>Buchanan-Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)).

Before proceeding to the plaintiff's allegations against the individual defendants, the court must dismiss the Racine Correctional Institution as a defendant. Section 1983 allows a plaintiff to sue a "person" who violated his civil rights while acting under color of state law. The Racine County Correctional Institution is not a "person." It is part of the Wisconsin Department of Corrections, which in turn is part of the state of Wisconsin's government. The state of Wisconsin is immune from suit under Article IV. Section 27 of the Wisconsin Constitution, unless the legislature consents to suit by law. <u>Mayhugh v. State</u>, 364 Wis.2d 208, 224 (Wis. 2015). The Wisconsin Supreme Court has held that the Department of Corrections is immune from suit. Id. at 228.

6

1.  *Fourteenth Amendment Due Process Claim*

The plaintiff alleges that Serrano, Amin and McClain violated his rights to due process under the Fourteenth Amendment. The Fourteenth Amendment protects an individual against deprivation of life, liberty, or property without due process of law. U.S. CONST. AMEND. XIV. "Those who seek to invoke [the Fourteenth Amendment's] procedural protection must establish that one of those interests is at stake." Once a plaintiff establishes that he has a liberty interest, "[d]ue process requires that prisoners in a disciplinary proceeding be given: '(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.'" Rasheed-Bey v. Duckworth, 969 F.2d 357, 351 (7th Cir. 1992).

The Seventh Circuit has held that "an inmate's liberty interest in avoiding segregation is limited." Hardaway v. Meyerhoff, 734 F.3d 740, 743 (7th Cir. 2013) (citing Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009)). To determine whether placement in segregation "amounts to a constitutional violation," courts look at "the combined import of the duration of the segregative confinement *and* the conditions endured." Id. (emphasis in original). In other words, the court looks at how long the inmate was in segregation, and the conditions of that segregation. The length of segregation alone often does not give rise to a liberty interest—the Seventh Circuit held in

one case that a six-month segregation term did not "trigger due process rights." Id. at 744 (citing Marion, 599 F.3d at 698)).

In this case, the fact that the plaintiff received a 120-day segregation sanction is not, by itself, enough to trigger a liberty interest. The question is whether a 120-day segregation term in a one-man cell occupied by two men, infested with ants, where the plaintiff had to sleep on a mattress on the floor and be bitten by ants, was an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 743 (citing Sandin v. Conner, 515 U.S. 472, 474 (1995)). The court concludes that at this early stage of the case, the plaintiff has stated sufficient facts to give rise to an inference that the situation he describes may have triggered a liberty interest.

The court then turns to the question of whether the plaintiff has asserted facts indicating that he may have been deprived of that liberty interest at his disciplinary hearing. The plaintiff has alleged that Serrano fabricated the allegations in the conduct report and used his position to influence the outcome of the hearing. He has alleged that McClain did not make sure that the video footage was available at the hearing, and that he was not allowed to present that video footage (despite having asked for it). He alleges that Amin found him guilty despite the fact that she had not seen the video footage. The plaintiff has asserted that he was not able to present exculpatory evidence and that Amin, the decision-maker, was not impartial. These allegations are sufficient allow the plaintiff to proceed on a Fourteenth Amendment due process claim against Serrano, McClain and Amin.

The plaintiff also alleges that Johnson violated his due process rights, because the plaintiff explained everything to Johnson in the appeal of his sanction and yet Johnson affirmed the sanction. Liability under §1983 is predicated on a defendant's personal involvement in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). He "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Jones v. City of Chi., 856 F.2d 985, 992 (7th Cir. 1988)).

At this early stage, the court concludes that the plaintiff has alleged sufficient facts to allow him to proceed against Johnson on his Fourteenth Amendment claim, because he alleges that Johnson knew about the due process violations and turned a blind eye.

    2.    *Conditions of Confinement*

The plaintiff alleges that Geirnoff violated his Eighth Amendment right to be free from cruel and unusual punishment. He argues that Geirnoff "allows, condones & oversees the practices of double celling inmates . . . in one man cells, sleeping on the floor with insect infestation." Dkt. No. 1 at 6. The plaintiff also alleges that Johnson is liable for the same Eighth Amendment violations, because the plaintiff contacted him "countless times" by email and through staff about the conditions in his segregation cell, yet Johnson did nothing.

9

Prison conditions can constitute cruel and unusual punishment if the conditions are so severe that they deny an inmate "the minimal civilized measure of life's necessities." Hudson v. McMillian, 503 U.S. 1, 20 (1992); Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006). To state a conditions-of-confinement claim, the plaintiff must allege that: (1) the prison conditions were serious enough to deny him basic human needs; and (2) the officers acted with a culpable state of mind, which at the minimum level, requires "deliberate indifference." McNeil v. Lane, 16 F.3d 123, 124 (7th Cir. 1993).

The plaintiff states that he wrote to Johnson and Geirnoff about double bunking in the segregation unit and the ant infestation in his cell. Neither did anything to correct the issues. As a result, the plaintiff had to sleep on an ant-infested floor for a week, and suffered over 100 ant bites on his torso and arms. He felt humiliated and tortured and could not sleep. These allegations are sufficient to allow the plaintiff to proceed on an Eighth Amendment conditions-of-confinement claim against Johnson and Geirnoff.

## III.   CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** the agency having custody of the plaintiff to collect from the plaintiff's prison trust account the **$332.89** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forward payments to the Clerk of Court each time

the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden of Racine Correctional Institution.

The court **ORDERS** that Racine Correctional Institution is **DISMISSED** as a defendant.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on Serrano, Amin, McClain, Geirnoff and Johnson. These defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should, however, keep a personal copy of each document filed with the court.

The court advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss his case for failure to prosecute.

The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 19th day of June, 2018.

                      **BY THE COURT:**

                      **HON. PAMELA PEPPER**
                      **United States District Judge**